**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

ALEXANDER BLAZQUEZ,

                                   Plaintiff,

v.                                                                            1:21-cv-1286 (BKS/DJS)

CITY OF AMSTERDAM, AMSTERDAM CITY POLICE
DEPARTMENT, COUNTY OF MONTGOMERY,
PETER M. CALIFANO, Assistant District Attorney,
LORRAINE DIAMOND, District Attorney, Montgomery
County, NOAH WESTERN, MILLER, and TYLER, as
Police Officers of the Amsterdam Police Department,
MARISA VITALE, H. GWOZDZ, C. WEAVER, and E.
RICE, as New York State Department of Corrections and
Community Supervision Parole Officers, sued individually
and in their official capacities,

                                   Defendants.

_____

**Appearances:**

_For Plaintiff:_
Daniel R. Smalls
Law Office of Daniel R. Smalls, PLLC
251 State Street
Suite 202
Schenectady, New York 12305

_For Defendants County of Montgomery, Peter M. Califano, and Lorraine Diamond:_
Thomas K. Murphy
Murphy Burns LLP
407 Albany Shaker Road
Loudonville, New York 12211

_For Defendants Marisa Vitale, Heather Gwozdz, Christopher Weaver, and Eric Rice:_
Letitia James
Attorney General of the State of New York
Kasey K. Hildonen
Assistant Attorney General, of Counsel
The Capitol
Albany, New York 12224

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff Alexander Blazquez brings this action against twelve Defendants: (1) City of Amsterdam; (2) Amsterdam City Police Department; (3) County of Montgomery; (4) Peter M. Califano; (5) Lorraine Diamond; (6) Noah Western; (7) Miller; (8) Tyler;[1] (9) Marisa Vitale; (10) Heather Gwozdz; (11) Christopher Weaver; and (12) Eric Rice.[2] (Dkt. No. 1, at 2.) When construed liberally, Plaintiff's verified pro se complaint asserts claims under 42 U.S.C. §§ 1983, 1985 for (1) illegal search and seizure; (2) unlawful arrest; (3) abuse of process; (4) malicious prosecution; (5) negligence and municipal liability; (6) intentional infliction of emotional distress; (7) conspiracy; and (8) racial discrimination.[3] (*Id.* ¶¶ 14–101.) Plaintiff seeks compensatory damages, punitive damages, declaratory judgment, and injunctive relief. (*Id.* ¶¶ 102–16.) Defendants City of Amsterdam, Amsterdam City Police Department, Noah Western, Miller, and Tyler ("Amsterdam Defendants") filed an answer to the complaint. (Dkt. No. 18.) Presently before the Court are (1) Defendants County of Montgomery, Peter M. Califano, and Lorraine Diamond's ("Montgomery Defendants") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (Dkt. No. 20), and (2) Defendants Marisa Vitale, Heather Gwozdz, Christopher Weaver, and Eric Rice's ("DOCCS Defendants" and, together with Montgomery

---

[1] Plaintiff does not identify Defendants Miller and Tyler, both of whom are police officers of the Amsterdam Police Department, (Dkt. No. 1, ¶¶ 3–4; Dkt. No. 18, ¶¶ 4–5), by first name.

[2] Plaintiff identifies Defendants Heather Gwozdz, Christopher Weaver, and Eric Rice by first initial. (Dkt. No. 1.) These Defendants' first names are gleaned from their memorandum of law in support of their motion to dismiss. (Dkt. No. 36-5, at 1.)

[3] While Plaintiff does not explicitly raise a claim for racial discrimination, he twice indicates he is Hispanic, (*Id.* ¶¶ 21, 39), and states that he "believes that the acts against him . . . are done discriminatorily because of his [H]ispanic race," (*Id.* ¶ 39). Plaintiff further alleges that he "was deprived of his rights and immunities secured to him under the Constitution[,] . . . including his rights under the Fourteenth amendment . . . to equal protection of the laws." (*Id.* ¶ 48.) Thus, construing the complaint liberally, the Court concludes that Plaintiff has raised a racial discrimination claim.

Defendants, "Moving Defendants") motion to dismiss pursuant to Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6), (Dkt. No. 36). Plaintiff opposes each of these motions. (Dkt.

Nos. 34, 41.)[4] Montgomery Defendants filed a reply in further support of their motion. (Dkt. No.

35.) For the following reasons, the Court grants both motions to dismiss.

## II.    FACTS[5]

Plaintiff alleges that on April 22, 2021, he was on his own property and another

individual, whom Plaintiff names in the complaint, was also on Plaintiff's property. (Dkt. No. 1,

¶ 15.) Plaintiff asserts he entered his own apartment and closed the door, and the other individual

began hitting Plaintiff's door with a baseball bat while wielding a knife. (*Id.* ¶ 17.) Plaintiff

armed himself with "a hammer and a knife" to defend himself and asked the other individual to

leave the property. (*Id.* ¶ 18.) A third individual called the police and informed them that

Plaintiff was "wielding a machete and running around the block," which Plaintiff alleges was not

true. (*Id.* ¶ 19.) When police officer Defendants Miller and Tyler arrived, they "got out of the car

running and held both the Plaintiff and his 18[-]year[-]old son at gun point on the Plaintiff['s]

front porch." (*Id.* ¶ 20.) Plaintiff explained what had happened to these Defendants but alleges

that they "did not believe the Plaintiff because [the other individual] was white and the Plaintiff

was [H]ispanic." (*Id.* ¶ 21.) Defendants Miller and Tyler then left Plaintiff's property. (*Id.* ¶ 22.)

Plaintiff alleges that on April 24, 2021, he called Defendant Amsterdam City Police

Department and spoke to Defendant Western about pressing charges against the individual who

---

[4] At the time he filed his complaint, Plaintiff was proceeding pro se. (Dkt. No. 1.) Plaintiff is now represented by counsel, and Plaintiff's opposition to each motion was prepared with the assistance of counsel. (Dkt. Nos. 34, 41.)

[5] The facts are drawn from the verified complaint and are focused on the facts relevant to the pending motions. (Dkt. No. 1.) The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of N.Y.*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true the legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

had been on Plaintiff's property two days before. (*Id.* ¶ 23.)[6] Defendant Western "stated that he would come to [Plaintiff's restaurant] or send someone there to take the Plaintiff[']s statement but no-one ever showed up." (*Id.* ¶ 24.) Rather, Plaintiff alleges that Defendant Western "telephoned the Plaintiff[']s upstairs tenant and had her call [the individual who had been on Plaintiff's property] to press charges against the Plaintiff." (*Id.*)

Defendant Western then arrested Plaintiff at Plaintiff's residence. (*Id.* ¶ 27.) Defendant Vitale, who was Plaintiff's parole officer at that time, was also present, along with "other Defendant Police Officers." (*Id.* ¶¶ 28–30.) Plaintiff alleges that Defendant Vitale is "personal friends" with Defendant Western. (*Id.* ¶ 28.) Defendant Vitale and Defendant police officers searched Plaintiff's residence "pursuant to an arrest warrant, and not a search warrant." (*Id.* ¶¶ 29, 32.) There were "[two] other parole officers," and "[four] other police officers" present. (*Id.* ¶¶ 33.) During the search, Defendant Western "was walking around the Plaintif[f']s home . . . wielding a knife and h[olding] a bag with a white powdery substance pretending that it was drugs." (*Id.* ¶ 31.) Several police officers "destroyed the Plaintiff[']s apartment and caused damage[] to items in his house." (*Id.* ¶ 32.) Plaintiff alleges that during the search, Defendant Vitale said to a police officer that the search was illegal. (*Id.* ¶ 35.) Plaintiff alleges that "[D]efendants planned the police encounter to damage [P]laintiff in his personal and professional life and to gain retribution against him for daring to file an earlier criminal complaint." (*Id.* ¶ 78.)

Plaintiff was then brought to the Amsterdam City Police Department where, Plaintiff alleges, he was "unlawfully imprisoned and detained . . . without probable cause and without

---

[6] Plaintiff alleges that this was his second interaction with Defendant Western. (*Id.* ¶ 22.) Plaintiff alleges that on September 12, 2020, Defendant Western took $8,075 from Plaintiff and then "tried to say that there was not any money in the house." (*Id.* ¶ 25.) Plaintiff then "showed Western where the money was and Western . . . proceeded to say that [Western] dropped the money on the table in the house which was also not true." (*Id.* ¶ 26.) The Court construes this as an allegation that Defendant Western stole $8,075 from Plaintiff. This interaction, Plaintiff appears to allege, resulted in Defendant Western being "biased against the Plaintiff." (*Id.* ¶ 27.)

cause whatsoever." (*Id.* ¶¶ 50–51.) There, Defendant Western told Defendant Vitale that they could not charge Plaintiff "with drugs . . . because what he had done by searching the house was an illegal search and seizure." (*Id.* ¶ 38.) Defendant Western charged Plaintiff with criminal possession of a weapon in the third degree and menacing in the second degree. (*Id.* ¶ 42.) Subsequently, Defendant Diamond "initiated and maintained criminal litigation" against Plaintiff. (*Id.* at 2.) The charges were ultimately dismissed on November 23, 2021. (*Id.* ¶ 43.)

As a result of Defendants' actions, Plaintiff's restaurant closed and Plaintiff "has lost income and gained excessive debt." (*Id.* ¶ 40.)

Plaintiff alleges that Defendant police officers "Western, Miller, and Tyler directly violated the rules and regulations of the Amsterdam Police Department" and that Defendant parole officers "Vitale, Rice, Weaver, and Gwozdz directly violated the rules and regulations of the New York State Department of Corrections and Community Supervision" ("DOCCS"). (*Id.* ¶¶ 45–46.) Plaintiff also alleges that "[e]ach of the [D]efendants separately and in concert acted outside the scope of their jurisdiction and without authorization of law and each of the [D]efendants, separately and in concert, acted wil[l]fully, knowingly and purposefully with the specific intent to deprive [P]laintiff" of constitutional rights. (*Id.* ¶¶ 52, 71.) Plaintiff further alleges that Defendant County of Montgomery and non-defendant New York State DOCCS have failed to "adequately train, supervise, discipline, or in any other way control the behavior of" their employees. (*Id.* ¶¶ 88–89.)

## III.   STANDARD OF REVIEW

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Mann v. N.Y. State Ct. of Appeals*, No. 21-cv-49, 2021 WL 5040236, at *3, 2021 U.S. Dist. LEXIS 209018 (N.D.N.Y.

Oct. 29, 2021) (citation omitted); *see also Vidurek v. Koskinen*, 789 F. App'x 889, 892 (2d Cir. 2019) (evaluating doctrine of sovereign immunity under Rule 12(b)(1)).

    **A.**    **Rule 12(b)(1)**

    "A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (internal quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010). "To survive a defendant's Rule 12(b)(1) motion to dismiss for lack of standing, plaintiffs must allege facts that affirmatively and plausibly suggest that [they have] standing to sue." *Id.*, 2015 WL 4067066, at *4, 2015 U.S. Dist. LEXIS 86081, at *12 (quoting *Kiryas Joel Alliance v. Vill. of Kiryas Joel*, 495 F. App'x 183, 188 (2d Cir. 2012) (summary order) (alteration in original) (internal quotation marks omitted)). A district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true[] and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "The standard for a Rule 12(b)(1) motion to dismiss for lack of subject[-]matter jurisdiction is 'substantively identical' to the 12(b)(6) standard." *Rehab. Support Servs. v. City of Albany*, No. 14-cv-499, 2015 WL 4067066, *2, 2015 U.S. Dist. LEXIS 86081, *6 (N.D.N.Y. July 2, 2015) (quoting *Berkovitz v. Vill. of S. Blooming Grove*, No. 09-cv-291, 2010 WL 3528884, at *5, 2010 U.S. Dist. LEXIS 93563, at *15 (S.D.N.Y. Sept. 3, 2010)).

### B.      Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of N.Y.*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

The complaint of a plaintiff proceeding pro se "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

## IV.    ANALYSIS

### A.      Eleventh Amendment Immunity

DOCCS Defendants argue that, to the extent Plaintiff asserts claims against them in their official capacities, they are entitled to immunity under the Eleventh Amendment and dismissal of these claims under Rule 12(b)(1). (Dkt. No. 36-5, at 24–25.) Plaintiff does not address this argument. (Dkt. No. 34.) Montgomery Defendants do not move to dismiss under Rule 12(b)(1)

but argue that, to the extent Plaintiff asserts claims against Defendants Diamond and Califano in their official capacities, such claims are barred by the Eleventh Amendment. (Dkt. No. 20-2, at 10.)[7]

      The Eleventh Amendment provides that "[t]he judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment bars suits against a state unless Congress has abrogated the state's sovereign immunity, the state has consented to suit, or a plaintiff is "seeking injunctive relief against a state official for an ongoing violation of law or the Constitution." *N.Y. State Corr. Officers & Police Benevolent Ass'n, Inc. v. New York*, 911 F. Supp. 2d 111, 124–25 (N.D.N.Y. 2012) (citing *Ex Parte Young*, 209 U.S. 123, 154 (1908)). It is well-established that Congress did not abrogate states' immunity when it enacted § 1983, *see Quern v. Jordan*, 440 U.S. 332, 343–45 (1979), and that New York State has not waived immunity from suit on the claims Plaintiff asserts, *see, e.g., LoPorto v. Cnty. of Rensselaer*, No. 15-cv-0866, 2018 WL 4565768, at *6, 2018 U.S. Dist. LEXIS 162432, at *14 (N.D.N.Y. Sept. 24, 2018); *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 39–40 (2d Cir. 1977). Thus, the Eleventh Amendment bars suits against New York, New York agencies, and New York officials sued in their official capacities except to the extent that a suit seeks injunctive relief for an ongoing violation of the law or the Constitution. *See Keitt v. New York City*, 882 F.

---

[7] "A claim that is barred by a state's sovereign immunity must be dismissed pursuant to the Eleventh Amendment for lack of subject matter jurisdiction." *Morales v. New York*, 22 F. Supp. 3d 256, 268 (S.D.N.Y. 2014) (citation omitted). That is, Montgomery Defendants' Eleventh Amendment argument is properly made under Rule 12(b)(1). *See id.* Although Montgomery Defendants moved to dismiss pursuant only to Rule 12(b)(6), because "subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte," *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000), the Court will consider Montgomery Defendants' Eleventh Amendment argument under the Rule 12(b)(1) standard in conjunction with DOCCS Defendants' Rule 12(b)(1) motion. *See Morris v. N.Y. State Police*, 268 F. Supp. 3d 342, 359 (N.D.N.Y. 2017).

Supp. 2d 412, 447 (S.D.N.Y. 2011). "When prosecuting a criminal matter, a district attorney in

New York State, acting in a quasi-judicial capacity, represents the State, not the county." *Baez v.*

*Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988); *see also Woodward v. Off. of Dist. Att'y*, 689 F. Supp.

2d 655, 659 (S.D.N.Y. 2010) ("The District Attorney's Office is an agency of the State of New

York."). Similarly, "DOCCS and its facilities are state agencies for purposes of the Eleventh

Amendment." *Rother v. N.Y. State Dep't of Corr. and Cmty. Supervision*, 970 F. Supp. 2d 78,

89–90 (N.D.N.Y. 2013).

Plaintiff has not alleged any ongoing violation of the law or the Constitution by any

DOCCS or Montgomery Defendant. Plaintiff's claims against Defendants Vitale, Gwozdz,

Weaver, Rice, Diamond, or Califano in their official capacities are construed as claims against

New York and are thus barred by the Eleventh Amendment. *See Woodward*, 689 F. Supp. 2d at

659 (S.D.N.Y. 2010) ("To the extent that [the plaintiff] seeks to assert claims against the District

Attorney's Office in federal court, his claims are . . . barred by the Eleventh Amendment.");

*Rother*, 970 F. Supp. 2d at 91 ("Plaintiff's [§ 1983] claims against the Individual [DOCCS]

Defendants in their official capacities are therefore, to the extent damages are sought, dismissed

for lack of subject-matter jurisdiction."). Therefore, Plaintiff's claims against Defendants Vitale,

Gwozdz, Weaver, Rice, Diamond, or Califano in their official capacities are dismissed.[8]

---

[8] DOCCS Defendants also move to dismiss under Rule 12(b)(1) on qualified immunity grounds. (Dkt. No. 36-5, at 25–27.) As an initial point, the Court notes that motions to dismiss based on qualified immunity grounds are generally brought pursuant to Rule 12(b)(6). *See, e.g., Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191 (2d Cir. 2006) ("[A] qualified immunity defense can be presented in a Rule 12(b)(6) motion . . . ." (first alteration in original) (quoting *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004))). In any event, a ruling on qualified immunity on this record would be premature, and the Court declines to address qualified immunity here. *See, e.g., Chamberlain ex rel. Chamberlain v. City of White Plains*, 960 F.3d 100, 111 (2d Cir. 2020) ("[A]dvancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch.").

### B.        Prosecutorial Immunity

Montgomery Defendants argue that, to the extent Plaintiff is alleging claims against Defendants Diamond and Califano in their individual capacities, such claims are barred by prosecutorial immunity. (*Id.* at 11–12.) Plaintiff does not address this argument. (Dkt. No. 34.)

"[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). The Second Circuit has made clear that prosecutors acting in an advocative role within the scope of their duties enjoy absolute immunity from § 1983 suits—only those acting "without any colorable claim of authority" are denied absolute immunity. *See Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 504 (2d Cir. 2004) (quoting *Schloss v. Bouse*, 876 F.2d 287, 291 (2d Cir. 1989)). "The appropriate inquiry, thus, is not whether authorized acts are performed with a good or bad *motive*, but whether the *acts* at issue are beyond the prosecutor's authority." *Id.* Absolute immunity covers "conduct of prosecutors that was 'intimately associated with the judicial phase of the criminal process,'" *id.* at 502 (quoting *Imbler*, 424 U.S. at 430), "but not [] a prosecutor's acts of investigation or administration," *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994), which are "protected only by qualified, rather than absolute, immunity," *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997); *see also Bernard*, 356 F.3d at 502 ("Absolute immunity . . . [applies to] prosecutors . . . when they function as advocates for the state in circumstances 'intimately associated with the judicial phase of the criminal process.' By contrast, only qualified immunity applies to law enforcement officials, including prosecutors, when they perform investigative functions." (citations omitted) (quoting *Imbler*, 424 U.S. at 430)).

Plaintiff's only specific allegation related to the conduct of Defendant Diamond is that she "initiated and maintained criminal litigation against the [P]laintiff in violation of his constitutional rights." (Dkt. No. 1, at 2.) Because Defendant Diamond was only alleged to have

taken action "intimately associated with the judicial phase of the criminal process"—that is, prosecutive, as opposed to investigative, action, *see Bernard*, 356 F.3d at 502, 504 (quoting *Imbler*, 424 U.S. at 430)—she is "immune from a civil suit for damages under § 1983." *See Imbler*, 424 U.S. at 431. Thus, Plaintiff's claims against Defendant Diamond in her individual capacity are barred by absolute prosecutorial immunity. Furthermore, Plaintiff makes no specific allegations against Defendant Califano. Plaintiff merely includes Defendant Califano in the caption, identifies him as an employee of Defendant County of Montgomery, and alleges that Defendant County of Montgomery failed "to adequately train, supervise, discipline[,] or in any other way control" him. (Dkt. No. 1, ¶¶ 7, 89.) Indeed, "[t]he body of the [c]omplaint does not contain any factual allegations naming [him][] or indicating that [he] violated the law or injured the Plaintiff in some manner." *Joseph v. Annucci*, No. 18-cv-7197, 2020 WL 409744, at *4, 2020 U.S. Dist. LEXIS 13160, at *11 (S.D.N.Y. Jan. 23, 2020). Accordingly, Defendant Califano is dismissed from this action. *See id.*; *see also Costello v. City of Burlington*, 632 F.3d 41, 48–49 (2d Cir. 2011) ("The complaint does not allege facts establishing the personal involvement of any of the individual Defendants . . . . This defect is fatal to [a] claim under 42 U.S.C. § 1983.").[9] Thus, having already dismissed claims against Defendants Diamond and Califano in their official capacities, Defendants Diamond and Califano are dismissed from this action.[10] And because the Court has dismissed Defendant Diamond because she has absolute immunity for the only allegation alleged as to her—initiating and maintaining "criminal litigation against the

---

[9] Even if Defendant Califano similarly "initiated and maintained criminal litigation" against Plaintiff, claims against Defendant Califano in his individual capacity would be barred by absolute prosecutorial immunity.

[10] Prosecutorial immunity and municipal liability under *Monell* involve separate inquiries. *Bellamy v. City of N.Y.*, 914 F.3d 727, 760 (2d Cir. 2019). But where a plaintiff fails to plausibly allege an underlying violation, a *Monell* claim fails. *See Anilao v. Spota*, 27 F.4th 855, 874 (2d Cir. 2022) (rejecting a claim of county liability for the conduct of county prosecutors because "there was no evidence of a constitutional violation" at the investigative stage). Accordingly, Defendant County of Montgomery is also dismissed from this action.

Plaintiff"—and Defendant Califano because there are no factual allegations regarding him in the body of the complaint, the Court need not consider the remaining substantive claims as to Defendants Diamond and Califano.

### C.      Illegal Search and Seizure

Plaintiff alleges that on April 26, 2021, the Defendant police officers and Defendant Vitale violated Plaintiff's "right against the illegal search and seizure of his home[] by searching the house pursuant to an arrest warrant, and not a search warrant" and that "two . . . other paroles officers . . . and [four] other police officers [were] in the Plaintiff[']s house." (Dkt. No. 1, ¶¶ 14–57; Dkt. No. 41, at 4–5.) DOCCS Defendants argue that Defendant Vitale, who was Plaintiff's parole officer, (Dkt. No. 1, ¶ 30), did not require probable cause to search Plaintiff's residence and that Plaintiff failed to allege any personal involvement of Defendants Gwozdz, Weaver, and Rice in the allegedly illegal search and seizure. (Dkt. No. 36-5, at 13–15.)

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. This "protects the right of private citizens to be free from unreasonable government intrusions into areas where they have a legitimate expectation of privacy." *United States v. Newton*, 369 F.3d 659, 664 (2d Cir. 2004) (citations omitted). While warrantless searches are generally presumed unreasonable, there are exceptions to this rule. *See id.* at 665. As is relevant here, "[a] State's operation of a probation system . . . presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Griffin v. Wisconsin*, 483 U.S. 868, 873–74 (1987). The Second Circuit has similarly concluded that "the operation of a parole system . . . presents special needs justifying a departure from the traditional Fourth Amendment warrant requirement." *Newton*, 369 F.3d at 665 (emphasis omitted). Accordingly, parolees "may be subject to 'a degree of impingement

upon privacy that would not be constitutional if applied to the public at large.'" *United States v. Barner*, 666 F.3d 79, 84 (2d Cir. 2012) (quoting *United States v. Grimes*, 225 F.3d 254, 258 (2d Cir. 2000)). Still, "the law requires that such greater intrusions occur pursuant to a rule or regulation 'that itself satisfies the Fourth Amendment's reasonableness requirement.'" *Id.* (quoting *Newton*, 369 F.3d at 665). The Second Circuit has adopted the standard set forth by the New York Court of Appeals in *People v. Huntley*, 371 N.E.2d 794 (N.Y. 1977), to determine whether the warrantless search of a parolee comports with the requirements of the Fourth Amendment. *See Grimes*, 225 F.3d at 259 n.4. That standard turns on whether "the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty." *Barner*, 666 F.3d at 84 (quoting *Huntley*, 371 N.E.2d at 797). A parole officer's duties include a duty "to investigate whether a parolee is violating the conditions of his parole, . . . one of which, of course, is that the parolee commit no further crimes." *Id.* at 85 (quoting *United States v. Reyes*, 283 F.3d 446, 459 (2d Cir. 2002)). This is true even when a parole officer's search of a parolee occurs days after the incident giving rise to the investigation. *See id.* at 86 (finding that the parole officer special needs exception applied even when a parole officer's search occurred two days after officers received a report of a parolee committing a crime). And "consent, whether obtained pursuant to parole regulation . . . or otherwise, is [not] required in addition to a reasonable relationship to the parole officer's duty to justify a warrantless parole search." *Id.* (citation omitted) (quoting *Newton*, 369 F.3d at 666). Furthermore, other officers are permitted to take part in a "coordinated effort" "as long as the probation officers are pursuing legitimate probation-related objectives." *See Reyes*, 283 F.3d at 464.

While DOCCS Defendants assert that, pursuant to Plaintiff's "Conditions of Release," Defendant Vitale did not require probable cause to search Plaintiff's residence, (Dkt. No. 36-5, at

14), the Court need not consider extraneous documents put forth by DOCCS Defendants to decide this motion because Plaintiff has failed to plausibly allege that Defendant Vitale violated Plaintiff's Fourth Amendment rights. Plaintiff alleges that police officers were told that "Plaintiff was wielding a machete and running around the block." (Dkt. No. 1, ¶ 19.) Plaintiff also alleges that the police had an arrest warrant and that Defendant Vitale, along with the Defendant police officers, searched Plaintiff's house "pursuant to" that arrest warrant. (*Id.* ¶ 29). But Plaintiff fails to plausibly allege any actions Defendant Vitale took that violated Plaintiff's Fourth Amendment rights. Though Plaintiff claims that Defendant Vitale "stated to the Amsterdam Police Department that the current search was illegal," (*Id.* ¶ 35), Plaintiff's only factual allegations related to the search involve Defendant police officers. (*Id.* ¶¶ 31–32.) The allegations naming Defendant Vitale are insufficient conclusory legal assertions. *See Iqbal*, 556 U.S. at 678. Thus, Plaintiff has failed to plausibly allege that Defendant Vitale violated his Fourth Amendment rights. Furthermore, the Court agrees with DOCCS Defendants that Plaintiff has not adequately alleged the personal involvement of Defendants Gwozdz, Weaver, and Rice in the search and seizure. (Dkt. No. 36-5, at 14–15.) Accordingly, Plaintiff's illegal search and seizure claim is dismissed as to Defendants Gwozdz, Weaver, and Rice. *See Costello*, 632 F.3d at 48–49. Thus, Plaintiff's illegal search and seizure claim is dismissed as to all DOCCS Defendants.

    **D.**    **False Arrest and Malicious Prosecution**

Plaintiff alleges that certain Defendants "seized [P]laintiff and brought him against his will, without his consent and over his protest to the Amsterdam City Police Department in Amsterdam[,] [N]ew York[,] where he was unlawfully imprisoned and detained under the direction of the [D]efendants for several hours, all without the consent and over the protest of the [P]laintiff" and that Defendants "wrongfully, unlawfully and maliciously prosecuted [P]laintiff by issuing a complaint which charged him with false and fictitious crimes of Criminal Possession

of a Weapon in the Third Degree and Menacing in the Second Degree." (Dkt. No. 1, ¶¶ 50–66, 80–86.) While the complaint does not make clear which Defendants Plaintiff alleges actually engaged in this behavior, Plaintiff's response to DOCCS Defendants' motion to dismiss states that these two claims, which the Court construes as claims for false arrest and malicious prosecution, are brought against "solely the [D]efendants Amsterdam City Police Department, County of Montgomery, Peter M. Califano, Lorraine C. Diamond, Officer Western and Police Officer Miller." (Dkt. No. 41, at 5.) Given that Defendants Diamond and Califano have been dismissed, the Court need not address Plaintiff's false arrest and malicious prosecution claims further.[11]

### E.    Abuse of Process

Plaintiff alleges that "[D]efendants planned the police encounter to damage [P]laintiff in his personal and professional life and to gain retribution against him for daring to file an earlier criminal complaint" and that "[D]efendants went on to improperly use the legal process as a means to achieve their alleged objectives." (Dkt. No. 1, ¶ 78.) This, Plaintiff claims, amounts to a malicious abuse of process. (*Id.* ¶¶ 67–79.) DOCCS Defendants argue that "Plaintiff's allegations, even broadly interpreted, are a reiteration of his unlawful arrest claim, as they are related to the alleged motivation of Defendants and probable cause related to the arrest itself, and do not satisfy the elements for an abuse of process claim." (Dkt. No. 36-5, at 14.)

---

[11] In the complaint, Plaintiff claims that Defendants Western, Miller, Tyler, Vitale, Rice, Weaver, and Gwozdz "seized [P]laintiff and brought him against his will, without his consent and over his protest to the Amsterdam City Police Department where he was unlawfully imprisoned and detained." (Dkt. No. 1, ¶ 50.) At the same time, however, Plaintiff alleges that officers had an arrest warrant, (*id.* ¶ 29), which would have given officers the right to arrest. *See Galarza v. Monti*, 327 F. Supp. 3d 594, 603 (S.D.N.Y. 2018). In any event, because Plaintiff clarifies that his claims for false arrest and malicious prosecution are brought against "solely the [D]efendants Amsterdam City Police Department, County of Montgomery, Peter M. Califano, Lorraine C. Diamond, Officer Western and Police Officer Miller." (Dkt. No. 41, at 5), the Court does not consider these claims as to DOCCS Defendants. Because Plaintiff will have the opportunity to amend the complaint, he should make clear precisely which claims are brought against precisely which Defendants.

As with false arrest and malicious prosecution, an abuse of process claim under § 1983 incorporates the corresponding state law elements of abuse of process, which, in New York, require a plaintiff to show that a defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse o[r] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *See Savino*, 331 F.3d at 76 (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)). But "[a] malicious motive alone . . . does not give rise to a cause of action for abuse of process." *Savino*, 331 F.3d at 77 (quoting *Curiano v. Suozzi*, 469 N.E.2d 1324, 1327 (N.Y. 1984)). Rather, "a plaintiff must establish that the defendants had an improper purpose in instigating the action." *Id.* (emphasis omitted) (citation omitted). To establish an improper purpose, "it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution." *Id.* "Instead," a plaintiff "must claim that [the defendants] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Id.* Additionally, the existence of probable cause may be probative of the existence of a valid abuse of process claim, but it is not dispositive. *See Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 958 (2d Cir. 2015).

Here, Plaintiff does not allege any specific involvement of DOCCS Defendants in the "planned . . . police encounter" from which the Court could plausibly infer an abuse of process claim with regard to DOCCS Defendants. Indeed, the alleged animus against Plaintiff that gave rise to the purported retributive abuse of process appears to stem solely from interactions with Defendant Western. (Dkt. No. 1, ¶¶ 23–27.) The involvement of DOCCS Defendants, it seems, arose only because "[t]he Plaintiff[']s Parole Officer, M. Vitale[,] is personal friends with Police Officer Western." (*Id.* ¶ 28.) This is insufficient to plausibly allege the involvement of Defendant

Vitale, or any other DOCCS Defendant, in the alleged abuse of process. *See Costello*, 632 F.3d at 48–49 (2d Cir. 2011). Plaintiff's abuse of process claim is dismissed as to all Moving Defendants.[12]

F.      **Negligence and Municipal Liability**

Plaintiff asserts a claim for negligence under New York law against Defendant County of Montgomery for failing to "adequately train, supervise, discipline or in any other way control the behavior of the [individual] [D]efendant[s]." (Dkt. No. 1, ¶¶ 89–90.) County of Montgomery has not addressed the viability of this claim as a state-law negligence claim.

While New York law does not allow a plaintiff to assert a general negligence claim arising out of an allegedly false arrest or malicious prosecution, *see Watson v. United States*, 865 F.3d 123, 134 (2d Cir. 2017), New York law does allow a plaintiff to assert a claim against an employer for negligent hiring, training, supervision, or retention. *See Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004). This requires, in addition to the standard negligence elements of duty, breach, causation, and damages, that a Plaintiff show that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence. *See id.*

Here, Plaintiff has pleaded no allegations demonstrating liability for negligence on behalf of any individual Montgomery Defendant that could serve as the basis for a state-law negligence claim against Defendant County of Montgomery. Thus, to the extent Plaintiff's negligence claim is based on New York law, it is dismissed as to Defendant County of Montgomery.

---

[12] Construing the complaint liberally, Plaintiff's abuse of process claim also raises a conspiracy claim, which the Court addresses separately below.

To the extent the complaint raises a *Monell* claim for municipal liability against Defendant County of Montgomery, it is similarly flawed. (Dkt. No. 1, ¶¶ 87–92.) "To establish liability under *Monell*, a plaintiff must show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom." *Bellamy v. City of N.Y.*, 914 F.3d 727, 756 (2d Cir. 2019) (citation omitted); *see also Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978). Here, Plaintiff has not adequately pleaded the violation of any of his constitutional rights by any Montgomery Defendant that could provide the basis for a municipal liability claim against Defendant County of Montgomery under *Monell*. *See Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006). Accordingly, Plaintiff's municipal liability claim is dismissed as against Defendant County of Montgomery.

### G.      Intentional Infliction of Emotional Distress

Plaintiff states that he "has plausibly alleged the intentional infliction of emotional distress" and then recites case law related to claims for intentional infliction of emotional distress under New York law. (Dkt. No. 1, ¶ 97.) DOCCS Defendants argue that this claim is "facially insufficient" in that it "fails to meet the elements required to plead an IIED cause of action." (Dkt. No. 36-5, at 23.)

Under New York law, a claim for intentional infliction of emotional distress has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Marcano v. City of Schenectady*, 38 F. Supp. 3d 238, 264–65 (N.D.N.Y. 2014) (quoting *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993)). A plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Howell*, 612 N.E.2d at 702).

Here, Plaintiff merely lists legal conclusions in support of his intentional infliction of emotional distress claim, which are insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678. Plaintiff has plainly failed to adequately allege any specific conduct, let alone outrageous and extreme conduct, on the part of any Montgomery or DOCCS Defendant. Accordingly, Plaintiff's claim for intentional infliction of emotional distress claim is dismissed as against all Moving Defendants.[13]

**H.      Conspiracy**

Plaintiff does not explicitly assert a conspiracy claim. But construing Plaintiff's complaint liberally, Plaintiff asserts a claim for conspiracy against all Defendants under § 1983 or § 1985. (Dkt. No. 1, ¶ 71.) Montgomery Defendants and DOCCS Defendants similarly construed the complaint. (Dkt. No. 20-2, at 5; Dkt. No. 36-5, at 20.) DOCCS Defendants argue that Plaintiff fails to adequately allege an underlying violation on which to predicate the conspiracy claim and that Plaintiff failed to plausibly allege facts that meet the elements of a conspiracy claim under § 1983. (Dkt. No. 36-5, at 20–22.)

To state a claim for civil rights conspiracy under § 1983, a plaintiff must allege that an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury and that an overt act was committed in furtherance of that goal. *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002). Vague and conclusory allegations that defendants have engaged in a conspiracy are insufficient to state a plausible claim. *See id.* at 325; *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory,

---

[13] Under the heading for Plaintiff's intentional infliction of emotional distress claim, Plaintiff, in addition to raising his intentional infliction of emotional distress claim, "asserts claims of fraud, deliberate indifference, invasion of privacy, tortious interference, . . . negligent infliction of emotional distress, misrepresentation, discrimination, [and] harassment." (Dkt. No. 1, ¶ 99.) These conclusory legal allegations are unsupported by any factual allegations and are therefore insufficient to raise claims under any of those legal theories. *See Iqbal*, 556 U.S. at 678.

vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Webb v. Goord*, 340 F.3d 105, 110–11 (2d Cir. 2003) (holding that to maintain a conspiracy action, a plaintiff "must provide some factual basis supporting a meeting of the minds"). "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.'" *Flores v. Levy*, No. 07-cv-3753, 2008 WL 4394681, at *9, 2008 U.S. Dist. LEXIS 72328, at *26 (E.D.N.Y. Sept. 23, 2008) (quoting *Twombly*, 550 U.S. at 554). A plaintiff must also allege "an actual violation of constitutional rights." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995); *see also Droz v. McCadden*, 580 F.3d 106, 109 (2d Cir. 2009); *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001).

To state a claim for civil rights conspiracy under § 1985, a plaintiff must allege: "1) a conspiracy; 2) for the purpose of depriving . . . any person . . . of the equal protection of the laws[;] . . . and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006) (citations omitted). In addition, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (citations omitted). A "[p]laintiff must also allege that (1) 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action,' and (2) the conspiracy was 'aimed at interfering with rights . . . protected against private, as well as official, encroachment.'" *Smith v. Tkach*, No. 17-cv-0286, 2019 WL 3975440, at *18, 2019 U.S. Dist. LEXIS 142456, at *47 (N.D.N.Y. Aug. 22, 2019) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993)).

Here, Plaintiff has not plausibly pleaded the violation of any of his constitutional rights or any other right or privilege of a citizen of the United States by any Moving Defendant that could provide the basis for a § 1983 or § 1985 conspiracy claim. Accordingly, his conspiracy claim is dismissed as against all Moving Defendants.

## I.      Racial Discrimination

Plaintiff does not explicitly raise a claim for racial discrimination but indicates he is Hispanic, (Dkt. No. 1, ¶¶ 21, 39), and states that he "believes that the acts against him . . . are done discriminatorily because of his [H]ispanic race," (*Id.* ¶ 39). Plaintiff further alleges that "was deprived of his rights and immunities secured to him under the Constitution . . . including his rights under the Fourteenth amendment . . . to equal protection of the laws." (*Id.* ¶ 48.) Thus, construing the complaint liberally, the Court concludes that Plaintiff has raised a Fourteenth Amendment equal protection claim. Moving Defendants do not address this claim.

"[T]o state a race-based equal protection claim, a plaintiff must show that a government actor intentionally discriminated against him [or] her." *Walker v. Shepard*, 107 F. Supp. 2d 183, 186 (N.D.N.Y. 2000) (citing *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999)); *see also Patterson v. City of N.Y.*, No. 16-cv-3525, 2017 WL 3432718, at *9, 2017 U.S. Dist. LEXIS 126279, at *21–22 (E.D.N.Y. Aug. 9, 2017) ("It is well established that '[p]roof of racially discriminatory intent or purpose is required' to show a violation of the Equal Protection Clause." (quoting *Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012))). Intentional discrimination "may be found where public officials were motivated by a discriminatory purpose." *Id.* (citing *Washington v. Davis*, 426 U.S. 229, 243–44 (1976)). "[P]urposeful discrimination requires more than intent as volition or intent as awareness of consequences." *Patterson*, 2017 WL 3432718, at *9, 2017 U.S. Dist. LEXIS 126279, at *22 (quoting *United States v. City of N.Y.*, 717 F.3d 72, 93 (2d Cir. 2013)). Instead, purposeful discrimination "involves a [state actor's] undertaking a

course of action because of, not merely in spite of, [the action's] adverse effects upon an identifiable group." *Id.* (second alteration in original) (quoting *City of N.Y.*, 717 F.3d at 93).

Here, Plaintiff's sole allegations relating to racial discrimination are that, when Plaintiff attempted to explain why he had wielded a hammer and a knife, Defendants Miller and Tyler "did not believe the Plaintiff because [the other individually involved in the incident] was white and the Plaintiff was [H]ispanic," (Dkt. No. 1, ¶ 21), and that Plaintiff "believes that the acts against him[] and the continuation of criminal charges against him are done discrim[in]atorily because of [Plaintiff's] [H]ispanic race," (*Id.* ¶ 39). These conclusory allegations are insufficient to establish any "discriminatory purpose" on the part of any Moving Defendant. *See Patterson*, 2017 WL 3432718, at *14, 2017 U.S. Dist. LEXIS 126279, at *36 ("A plaintiff may not avoid dismissal merely by 'tender[ing] "naked assertion[s]" devoid of "further factual enhancement."'" (quoting *Iqbal*, 556 U.S. at 678)). Accordingly, Plaintiff's racial conspiracy claim is dismissed as against all Moving Defendants.

## V.    OPPORTUNITY TO AMEND

Ordinarily, a court "should not dismiss" a pro se complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795–96 (2d Cir. 1999) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

In his response to DOCCS Defendants' motion to dismiss, Plaintiff requests leave to amend. (Dkt. No. 41, at 7 ("Simply[,] [P]laintiff made an inartful attempt to assert his rights in a complex civil proceeding. He now has counsel. It is respectfully submitted that . . . [P]laintiff[']s counsel should be permitted to amend the complaint to properly plead this action.").) Although it is unclear whether Plaintiff has any viable claims against DOCCS Defendants, in recognition of

the fact that Plaintiff is now represented by counsel, Plaintiff is granted leave to amend with regard to claims against DOCCS Defendants. *See Fransua v. Vadlamudi*, No. 05-1715, 2008 WL 4810066, at *2, 2008 U.S. App. LEXIS 23236, at *4 (2d Cir. 2008) (summary order) (granting a plaintiff leave to amend his complaint where "he was proceeding pro se when he filed the complaint[] but is now represented by counsel" (citation omitted)).

Plaintiff is granted leave to file an amended complaint within thirty (30) days of the date of this Order. Any such amended complaint will replace the existing complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original[] and renders it of no legal effect." (quotation marks and citations omitted)).

## VI.     CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants County of Montgomery, Lorraine Diamond, and Peter M. Califano's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (Dkt. No. 20), is **GRANTED**; and it is further

**ORDERED** that Defendants Marisa Vitale, Heather Gwozdz, Christopher Weaver, and Eric Rice's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), (Dkt. No. 36), is **GRANTED**; and it is further

**ORDERED** that all claims raised in Plaintiff's complaint, (Dkt. No. 1), as to Defendants Marisa Vitale, Heather Gwozdz, Christopher Weaver, and Eric Rice are **DISMISSED without prejudice and with leave to amend** as against Defendants Marisa Vitale, Heather Gwozdz, Christopher Weaver, and Eric Rice in their individual capacities; and it is further

**ORDERED** that Defendants County of Montgomery, Lorraine Diamond, and Peter M.

Califano are **DISMISSED from this action with prejudice**.

**IT IS SO ORDERED.**

Dated: February 22, 2023
      Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge