UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALEXANDER BLAZQUEZ,

                              Plaintiff,

v.                                                                            1:21-cv-1286 (BKS/DJS)

CITY OF AMSTERDAM, AMSTERDAM CITY POLICE
DEPARTMENT, and NOAH WESTERN, MILLER, and
TYLER, as Police Officers of the Amsterdam Police
Department,

                              Defendants.
_____

**Appearances:**

*For Plaintiff*:
Daniel R. Smalls
Law Office of Daniel R. Smalls, PLLC
240 State Street, Suite 4
Schenectady, New York 12305

*For Defendants*:
Thomas K. Murphy
Murphy Burns LLP
407 Albany Shaker Road
Loundonville, New York 12211

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

       On December 1, 2021, Plaintiff Alexander Blazquez initiated this action pro se[1] against

Defendants City of Amsterdam, Amsterdam City Police Department, and Noah Western,

Thomas Miller, and Brandon Tyler, as officers of the Amsterdam Police Department, along with

---

[1] At the time he filed his verified complaint, Plaintiff was proceeding pro se. (Dkt. No. 1.) Plaintiff was represented by counsel at the motion-to-dismiss stage and remains counseled for the instant motion.

others that have since been dismissed, asserting claims in his verified complaint under 42 U.S.C. § 1983 and § 1985 for false arrest; malicious prosecution; unlawful search; abuse of process; conspiracy; racial discrimination; and municipal liability and under New York law for negligence and intentional infliction of emotional distress. (*See* Dkt. No. 1); *see also Blazquez v. City of Amsterdam*, No. 21-cv-1286, 2023 WL 2164516, at *1, 2023 U.S. Dist. LEXIS 28920, at *1–2 (N.D.N.Y. Feb. 22, 2023) (construing Plaintiff's pro se complaint).

On March 1, 2022, Defendants City of Amsterdam, Amsterdam City Police Department, Western, Miller, and Tyler answered the complaint. (Dkt. No. 18.) On February 22, 2023, the Court granted the co-Defendants' motions to dismiss and dismissed all Defendants except Defendants City of Amsterdam, Amsterdam City Police Department, Western, Miller, and Tyler. *See Blazquez*, 2023 WL 2164516, at *11, 2023 U.S. Dist. LEXIS 28920, at *30. The Court also granted Plaintiff leave to amend, *see id.*, but Plaintiff did not amend his complaint. The Court assumes familiarity with its prior Memorandum-Decision and Order. *See id.*

Presently before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dkt. No. 47.) On March 5, 2024, more than a week after Plaintiff's response to Defendants' motion was due, Plaintiff requested an extension of time to respond. (Dkt. No. 48.) The Court denied Plaintiff's request because "Plaintiff failed to show good cause for failing to file a timely response," *see* N.D.N.Y. L. R. 7.1(a)(3), but allowed Plaintiff until March 14, 2024, to file a letter-request providing a showing of good cause. (Dkt. No. 49.) On March 15, 2024, a day after it was due, Plaintiff's counsel filed a letter indicating that his office was "playing catch up" due to "abrupt staff changes" yielding "a backload of civil cases." (Dkt. No. 50.) The Court granted Plaintiff an extension to April 2, 2024, to respond to Defendants' motion. (Dkt. No. 51.)

On April 3, 2024, a day after Plaintiff's response to Defendants' motion was due, Plaintiff's counsel filed a letter indicating that Plaintiff's response would be filed the following day. (Dkt. No. 52.) On April 4, 2024, Plaintiff filed what appears to be an incomplete version of his response, which was missing pages, (Dkt. No. 53), and on April 5, 2024, Plaintiff filed his complete response, (Dkt. No. 54). The Court accepted Plaintiff's late response for filing. (Dkt. No. 55.) Defendants did not file a reply brief.

For the following reasons, Defendants' motion for summary judgment is granted in part.

## II.     FACTS[2]

According to Defendants, on April 22, 2021, Defendants Miller and Tyler responded to Plaintiff's residence in the City of Amsterdam after receiving reports of a male with a machete attacking other people. (Dkt. No. 47-6, ¶ 1; Dkt. No. 47-3, ¶ 2; Dkt. No. 47-4, ¶ 2; Dkt. No. 47-2, at 1.) After arriving on the scene, Defendants Miller and Tyler interviewed Plaintiff, Plaintiff's tenant, and Plaintiff's tenant's friend, and as a result of those interviews, Defendants Miller and Tyler learned that an altercation had occurred between Plaintiff and another individual who had

---

[2] These facts are drawn, in part, from Defendants' Local Rule 56.1(a) Statement of Material Facts, (Dkt. No. 47-6), to the extent the facts are well-supported by pinpoint citations. The Court notes that Plaintiff's response to Defendants' Local Rule 56.1(a) Statement, (Dkt. No. 54, at 1), is improper because it fails to "mirror [Defendants'] Statement of Material Facts by admitting and/or denying each of the . . . assertions in a short and concise statement, in matching numbered paragraphs" and does not "set forth a[ny] specific citation to the record where the factual issue arises." *See* N.D.N.Y. L.R. 56.1(b). Accordingly, the Court may deem admitted any properly supported facts set forth in Defendants' Local Rule 56.1(a) Statement. *See id.* However, "[e]ven when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law," *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004), and the Court will therefore conduct an independent review of the record and consider Plaintiff's affidavit, (Dkt. No. 54, at 10–12), and Plaintiff's verified complaint, (Dkt. No. 1); *see Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56[(c)(4)]."), *abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020). Thus, these facts are also drawn from those sources.

The Court also notes that Plaintiff's counsel failed to appear at the Rule 16 conference, (Text Entry dated Apr. 21, 2023), and Defendants' counsel has represented that Plaintiff's counsel "served no mandatory disclosure, served no responses to Defendants' discovery demands, and served no discovery demands," (Dkt. No. 47-1, ¶¶ 16–20). The failure of Plaintiff's counsel to comply with the Court's orders and Local Rules is unacceptable.

left the scene. (Dkt. No. 47-6, ¶ 2; Dkt. No. 47-3, ¶ 5; Dkt. No. 47-2, at 2.) A witness stated that she observed Plaintiff threatening the other individual with a machete. (Dkt. No. 47-6, ¶ 3; Dkt. No. 47-3, ¶ 7; Dkt. No. 47-2, at 3.) During the course of the interview of Plaintiff at his residence, Plaintiff stated that he went into the common hallway of his residence armed with a machete to confront the other individual, whom Plaintiff believed did not belong at the residence. (Dkt. No. 47-6, ¶ 4; Dkt. No. 47-3, ¶ 5–6: Dkt. No. 47-4, ¶ 4; Dkt. No. 47-2, at 2, 3–4.) Defendant Tyler states that Plaintiff showed him the "machete," which was sitting on Plaintiff's table. (Dkt. No. 47-6, ¶ 5; Dkt. No. 47-3, ¶ 6: Dkt. No. 47-4, ¶ 5; Dkt. No. 47-2, at 2, 3–4.)

Plaintiff states that on April 22, 2021, he was on his own property and another individual was also on Plaintiff's property. (Dkt. No. 1, ¶ 15; Dkt. No. 54, ¶ 3.) Plaintiff asserts he entered his own apartment and closed the door, and the other individual began hitting Plaintiff's door with a baseball bat while wielding a knife. (Dkt. No. 1, ¶ 17; Dkt. No. 54, ¶ 5.) Plaintiff armed himself with "a hammer and a knife" to defend himself and asked the other individual to leave the property. (Dkt. No. 1, ¶ 8; Dkt. No. 54, ¶ 6.) A third individual called the police and informed them that Plaintiff was "wielding a machete and running around the block," which Plaintiff states was not true. (Dkt. No. 1, ¶ 19.) According to Plaintiff, when Defendants Miller and Tyler arrived, they "got out of the car running and held both the Plaintiff and his 18[-]year[-]old son at gun point on the Plaintiff['s] front porch." (*Id.* ¶ 20; Dkt. No. 54, ¶ 7.)

Defendant Western states that on April 23, 2021, he became aware of the incident and, because he knew Plaintiff was on parole, Defendant Western contacted Plaintiff's parole officer. (Dkt. No. 47-6, ¶ 7; Dkt. No. 47-5, ¶¶ 2–3; Dkt. No. 47-2, at 5.) Plaintiff's parole officer informed Defendant Western that she would follow up with Plaintiff and the other individual involved in the incident. (Dkt. No. 47-6, ¶ 8; Dkt. No. 47-5, ¶ 3; Dkt. No. 47-2, at 5.)

Defendant Western states that the following day, April 24, 2021, the other individual involved in the incident provided a sworn statement regarding the incident to Defendant Western at the Amsterdam Police Headquarters. (Dkt. No. 47-6, ¶ 9; Dkt. No. 47-5, ¶ 4; Dkt. No. 47-2, at 7–9.) In the sworn statement, the individual accused Plaintiff of threatening him with a machete on April 22, 2021, and indicated that the individual wanted to pursue criminal charges against Plaintiff. (Dkt. No. 47-6, ¶ 11; Dkt. No. 47-5, ¶ 5; Dkt. No. 47-2, at 7–9.) Defendant Western then notified Defendant Miller about the sworn statement. (Dkt. No. 47-6, ¶ 12; Dkt. No. 47-3, ¶ 12; Dkt. No. 47-5, ¶ 6.)

Plaintiff alleges that on April 24, 2021, he called Defendant Amsterdam City Police Department and spoke to Defendant Western about pressing charges against the individual who had been on Plaintiff's property two days before. (Dkt. No. 1, ¶ 23; Dkt. No. 54, ¶ 9.)[3] Defendant Western "stated that he would come to [Plaintiff's restaurant] or send someone there to take the Plaintiff[']s statement but no-one ever showed up." (Dkt. No. 1, ¶ 24; Dkt. No. 54, ¶ 10.) But, Plaintiff states, Defendant Western "telephoned the Plaintiff[']s upstairs tenant and had her call [the individual who had been on Plaintiff's property] to press charges against the Plaintiff." (Dkt. No. 1, ¶ 24; Dkt. No. 54, ¶ 10.)

Defendant Miller states that on April 26, 2021, he contacted the Montgomery County District Attorney's office and received assistance and input in evaluating the evidence he had obtained about the incident, and a determination was made that Plaintiff would be charged with violations of New York Penal Law section 265.02(1), possession of a weapon in the third degree,

---

[3] Plaintiff alleges that this was his second interaction with Defendant Western. (Dkt. No. 1, ¶ 22; Dkt. No. 54, ¶ 11.) Plaintiff alleges that on September 12, 2020, Defendant Western took $8,075 from Plaintiff and then "tried to say that there was not any money in the house." (Dkt. No. 1, ¶ 25; Dkt. No. 54, ¶ 11.) Plaintiff then "showed Western where the money was and Western . . . proceeded to say that [Western] dropped the money on the table in the house which was also not true." (Dkt. No. 1, ¶ 26.)

5

and section 120.14(1), menacing in the second degree. (Dkt. No. 47-6, ¶ 13; Dkt. No. 47-3, ¶ 17; Dkt. No. 47-2, at 3, 10–11.) Defendant Miller states that, while preparing the charging documents, he observed New York State parole officers outside of police headquarters and spoke with Plaintiff's parole officer, who indicated they were planning on searching Plaintiff's residence. (Dkt. No. 47-6, ¶ 14; Dkt. No. 47-3, ¶ 18; Dkt. No. 47-2, at 3.) Defendant Miller states that the parole officers were conducting the search of Plaintiff's residence to check compliance with Plaintiff's conditions of parole. (Dkt. No. 47-6, ¶ 15; Dkt. No. 47-3, ¶ 18.) Defendant Miller informed Plaintiff's parole officer of the charges to be filed against Plaintiff, and Defendants Miller and Tyler accompanied the parole officers to Plaintiff's residence. (Dkt. No. 47-6, ¶ 16; Dkt. No. 47-3, ¶ 18; Dkt. No. 47-4, ¶ 6; Dkt. No. 47-2, at 3.) Defendants Miller and Tyler state that while parole officers conducted the search, Defendants Miller and Tyler stood by Plaintiff and did not participate in the search. (Dkt. No. 47-6, ¶¶ 17, 22–23; Dkt. No. 47-3, ¶¶ 19, 24; Dkt. No. 47-4, ¶¶ 6, 8; Dkt. No. 47-2, at 3.) Defendant Western states that he was not present at Plaintiff's residence during the search and did not participate in the search or Plaintiff's arrest. (Dkt. No. 47-6, ¶ 24; Dkt. No. 47-5, ¶ 25; Dkt. No. 47-3, ¶ 25; Dkt. No. 47-4, ¶ 9.) After the search, parole officers informed Defendants Miller and Tyler that there would be a warrant for Plaintiff's arrest for violating the terms of his parole. (Dkt. No. 47-6, ¶ 18; Dkt. No. 47-3, ¶ 20; Dkt. No. 47-4, ¶ 7; Dkt. No. 47-2, at 3.) Defendant Miller states that, after he was advised that parole officers would be obtaining a warrant for Plaintiff's arrest, he placed Plaintiff under arrest for parole violations and transported Plaintiff to Amsterdam Police Headquarters for processing. (Dkt. No. 47-6, ¶ 19; Dkt. No. 47-3, ¶¶ 20, 23; Dkt. No. 47-2, at 3.) A warrant for Plaintiff's arrest was issued by the New York Division of Parole and was provided to Amsterdam Police. (Dkt. No. 47-6, ¶ 20; Dkt. No. 47-3, ¶ 20; Dkt. No. 47-2, at 12.)

Plaintiff, on the other hand, alleges that Defendant Western arrested Plaintiff at Plaintiff's residence. (Dkt. No. 1, ¶ 27.) Plaintiff's parole officer, along with "other Defendant Police Officers" and other parole officers, searched Plaintiff's residence "pursuant to an arrest warrant, and not a search warrant." (*Id.* ¶¶ 28–30, 32–33; Dkt. No. 54, ¶ 14.) Plaintiff alleges that his parole officer is "personal friends" with Defendant Western. (Dkt. No. 1, ¶ 28; Dkt. No. 54, ¶ 13.) Plaintiff states that during the search, Defendant Western "was walking around the Plaintif[f']s home . . . wielding a knife and h[olding] a bag with a white powdery substance pretending that it was drugs." (Dkt. No. 1, ¶ 31; Dkt. No. 54, ¶ 15.) Several police officers "destroyed the Plaintiff[']s apartment and caused damage[] to items in his house." (Dkt. No. 1, ¶ 32.) Plaintiff states that during the search, Plaintiff's parole officer said to a police officer that the search was illegal. (*Id.* ¶ 35; Dkt. No. 54, ¶ 16.) Plaintiff alleges that "[D]efendants planned the police encounter to damage [P]laintiff in his personal and professional life and to gain retribution against him for daring to file an earlier criminal complaint." (Dkt. No. 1, ¶ 78.)

Plaintiff alleges Defendant Western charged Plaintiff with criminal possession of a weapon in the third degree and menacing in the second degree and the charges were ultimately dismissed on November 23, 2021. (*Id.* ¶¶ 42–43; Dkt. No. 54, ¶ 2.)

Defendants state that on December 7, 2021, a final parole revocation hearing was held for Plaintiff, and Plaintiff entered a plea of guilty to one of the charged violations of his conditions of release—specifically that he had possessed a dangerous instrument with which he is alleged to have threatened the other individual on April 22, 2021. (Dkt. No. 47-6, ¶ 21; Dkt. No. 36-2, at 5; Dkt. No. 36-4, at 6.)

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all submissions taken together "show that there is no genuine issue as to any material fact and

7

that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is material if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*, 477 U.S. at 248). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The moving party may meet this burden by citing "particular parts of materials in the record," *see* Fed. R. Civ. P. 56(c)(1)(A), or by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," *see Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (explaining that summary judgment is appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))). If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). In ruling on a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Wilson v. NW Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all

reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alterations in original) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

**IV.    ANALYSIS**

    **A.    Defendant Amsterdam City Police Department**

As an initial matter, the Court addresses Defendants' argument that Amsterdam City Police Department is not a suable entity. (Dkt. No. 47-7, at 17.) In opposition, Plaintiff refers only to qualified immunity, (Dkt. No. 54, at 8–9), which was not raised by Defendants.

Under Rule 17(b)(3) of the Federal Rules of Civil Procedure, an entity's capacity to sue or be sued is determined by state law. "Under New York law, departments [that] are merely administrative arms of a municipality[] do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) (collecting cases); *Loria v. Town of Irondequoit*, 775 F. Supp. 599, 606 (W.D.N.Y. 1990). Accordingly, Defendant Amsterdam City Police Department, an arm of the City of Amsterdam, is not a suable entity, and Defendants' motion for summary judgment is granted with respect to Defendant Amsterdam City Police Department.

### B.     False Arrest and Malicious Prosecution

Defendants argue that they are entitled to summary judgment as to Plaintiff's claims for false arrest and malicious prosecution because there was probable cause to arrest Plaintiff. (Dkt. No. 47-7, at 5–8.) Plaintiff argues that questions of fact exist to preclude summary judgment as to these claims. (Dkt. No. 54, at 5–7.)

The elements of a claim for false arrest under § 1983 are: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." *Toussaint v. County of Westchester*, 615 F. Supp. 3d 215, 224 (S.D.N.Y. 2022) (alteration in original) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir. 2003)). But "[t]he existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). A claim for malicious prosecution under § 1983 requires demonstrating: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." See *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). As is true for a claim of false arrest, "the existence of probable cause is a complete defense to a claim of malicious prosecution." See *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003).

An officer has probable cause when they have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006). To determine the existence of probable

cause, a court "must consider those facts *available to the officer* at the time of the arrest and immediately before it." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002)). "[P]olice officers, when making probable cause determinations, are entitled to rely on the victims' allegations that a crime has been committed," *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)), if the circumstances do not "raise doubt as to the person's veracity," *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (quoting *Panetta*, 460 F.3d at 395).

Here, there existed probable cause to arrest Plaintiff based on undisputed evidence—namely, an eyewitness's statement, the alleged victim's sworn statement, and Plaintiff's own statements all confirming that Plaintiff had wielded a bladed weapon,[4] which Plaintiff showed to Defendant Tyler in his residence. (Dkt. No. 47-2, at 1–4, 6–9, 13–16; Dkt. No. 47-3, ¶¶ 6–7, 13–14; Dkt. No. 47-4, ¶ 5; Dkt. No. 47-5, ¶ 5; Dkt. No. 54, ¶¶ 5–6; Dkt. No. 1, ¶ 18; Dkt. No. 47-2, at 2, 3–4.) This evidence provided Defendants with reasonably trustworthy information that Plaintiff had committed a crime,[5] and therefore, there existed probable cause to arrest Plaintiff. *See Jaegly*, 439 F.3d at 152–53; *Panetta*, 460 F.3d at 395–99; *see also Singer*, 63 F.3d at 119 ("An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity."); *Morris v. Johnson*, No. 17-cv-371, 2020 WL 4365606, at *5, 2020 U.S. Dist. LEXIS 135092, at *11–13 (N.D.N.Y.

---

[4] Defendants characterize the weapon as a machete, (Dkt. No. 47-6, ¶¶ 1, 3–5), while Plaintiff characterizes the weapon as a knife, (Dkt. No. 54, ¶¶ 5–6; Dkt. No. 1, ¶ 18). This distinction is immaterial. Plaintiff also stated that in addition to the bladed weapon, he wielded a hammer. (Dkt. No. 54, ¶¶ 5–6; Dkt. No. 1, ¶ 18.)

[5] Prior to the search of Plaintiff's residence, Defendant Miller, in consultation the Montgomery County District Attorney's Office, decided to charge Plaintiff with violations of New York Penal Law sections 265.02(1), possession of a weapon in the third degree, and 120.14(1), menacing in the second degree. (Dkt. No. 47-3, ¶ 17; *see also* Dkt. No. 47-2, at 10, 13.)

11

July 30, 2020) (finding that corroborated eyewitness testimony is sufficient to establish probable cause).[6] Because the existence of probable cause is a complete defense to claims of false arrest and malicious prosecution, Defendants' motion for summary judgment as to Plaintiff's claims for false arrest and malicious prosecution is granted.

    **C.    Illegal Search**

Defendants argue that, because parole officers were "pursuing legitimate parole-related objectives" and because Defendants Miller and Tyler did not participate in the search of Plaintiff's residence and Defendant Western was not present at the time of the search, Defendants are entitled to summary judgment with respect to Plaintiff's illegal search claim. (Dkt. No. 47-7, at 8–10.) Plaintiff argues without citation to caselaw or facts in the record that "there was no reasonable suspicion or probable cause that a crime was committed" and the search of Plaintiff's residence was "unlawful and unreasonable." (Dkt. No. 54, at 7.)

As discussed in the Court's prior decision, *see Blazquez*, 2023 WL 2164516, at *6, 2023 U.S. Dist. LEXIS 28920, at *14–18, "the operation of a parole system . . . presents special needs justifying a departure from the traditional Fourth Amendment warrant requirement." *United States v. Newton*, 369 F.3d 659, 665 (2d Cir. 2004) (emphasis omitted). Whether the warrantless search of a parolee comports with the requirements of the Fourth Amendment depends on whether "the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty." *United States v. Barner*, 666 F.3d 79, 84 (2d Cir.

---

[6] Though Plaintiff does not raise this argument, his assertion that he was wielding the weapon for self-defense, (Dkt. No. 54, ¶ 6; Dkt. No. 1, ¶ 18), does not negate the existence of probable cause because a defendant is "not required to explore and eliminate every plausible claim of innocence before making an arrest" even where, as here, the plaintiff "claimed that he had a valid explanation for his actions." *See Jaegly*, 439 F.3d at 153. Nor does Plaintiff's suggestion that the eyewitness had lied, (Dkt. No. 1, ¶ 19), because the existence of probable cause depends on "those facts *available to the officer* at the time of the arrest and immediately before it," *Panetta*, 460 F.3d at 395, and there is no evidence in the record that would "raise doubt as to the person's veracity," *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (quoting *Panetta*, 460 F.3d at 395). Thus, even accepting Plaintiff's allegations as true, probable cause still existed.

2012) (quoting *People v. Huntley*, 371 N.E.2d 794, 797 (N.Y. 1977)). A parole officer's duties include a duty "to investigate whether a parolee is violating the conditions of his parole, . . . one of which, of course, is that the parolee commit no further crimes." *Id.* at 85 (quoting *United States v. Reyes*, 283 F.3d 446, 459 (2d Cir. 2002)). Furthermore, other officers are permitted to take part in a "coordinated effort" "as long as the probation officers are pursuing legitimate probation-related objectives." *See Reyes*, 283 F.3d at 464.

Here, Plaintiff was on parole. (Dkt. No. 1, ¶¶ 28, 30.) Defendant Western "contacted [Plaintiff's parole officer] on April 23, 2021 after learning of the incident involving [P]laintiff and advised her of the same." (Dkt. No. 47-5, ¶ 3.) Plaintiff's parole officer informed Defendant Western "that she would follow up with the other individual involved in the incident . . . as well as [P]laintiff." (*Id.*) Defendant Miller "spoke with [Plaintiff's parole officer,] who stated that she and her fellow officers were planning on responding to [P]laintiff[']s residence to conduct a search to check for Plaintiff[']s compliance with the conditions of his parole in light of the incident that occurred" on April 22, 2021. (Dkt. No. 47-3, ¶ 18.) Defendant Miller "advised [Plaintiff's parole officer] of the pending charges." (*Id.*) Plaintiff's parole officer and others subsequently conducted a search of Plaintiff's residence. (*Id.* ¶¶ 19–20; Dkt. No. 47-4, ¶¶ 6–7; Dkt. No. 54, ¶ 14; Dkt. No. 1, ¶ 29.)

In light of the evidence supporting probable cause to arrest, of which Plaintiff's parole officer was aware, (Dkt. No. 47-5, ¶ 3; Dkt. No. 47-3, ¶ 18), the search was rationally and reasonable related to the performance of the parole officers' duty to "investigate whether a parolee is violation conditions of his parole." *See Barner*, 666 F.3d at 85; *see also Purnell v. Scarglato*, 409 F. Supp. 3d 54, 58 (E.D.N.Y. 2019) ("There can be no question that the warrantless search by the parole officer was reasonably related to the parole officer's duty—the

13

officer had been informed of contraband in Plaintiff's home.").[7] Even accepting Plaintiff's allegations that Defendants participated in the search as true, (Dkt. No. 54, ¶ 15; Dkt. No. 1, ¶¶ 29, 31–32), Defendants were permitted to take part in the "coordinated effort" because the "officers [were] pursuing legitimate probation-related objectives." *See Reyes*, 283 F.3d at 464.

Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's illegal search claim.

D.      **Abuse of Process**

Defendants argue that there exists no admissible evidence in support of Plaintiff's abuse of process claim. (Dkt. No. 47-7, at 11.) Plaintiff does not provide a counterargument. (Dkt. No. 54, at 7.)

As discussed in the Court's prior decision, *see Blazquez*, 2023 WL 2164516, at *7–8, 2023 U.S. Dist. LEXIS 28920, at *19–21, "[a] malicious motive alone . . . does not give rise to a cause of action for abuse of process," *Savino*, 331 F.3d at 77 (quoting *Curiano v. Suozzi*, 469 N.E.2d 1324, 1327 (N.Y. 1984)). Rather, "a plaintiff must establish that the defendants had an improper purpose in instigating the action," and to establish an improper purpose, "it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution." *Id.* (emphasis omitted) (citation omitted). Instead, a plaintiff "must claim that [the defendants] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Id.*

Plaintiff's abuse of process claim is premised on his allegation that Defendants "abused otherwise regularly issued legal process in a further effort to inflict economic harm against

---

[7] Defendants refer to certain conditions of Plaintiff's parole, which are found in an exhibit to a prior motion to dismiss. (Dkt. No. 47-6, ¶ 21; Dkt. No. 36-2.) Such conditions include refraining from possessing any instrument readily capable of causing physical injury without a satisfactory explanation for possession and refraining from violating provisions of law to which he is subject that provide a penalty of imprisonment. (Dkt. No. 36-2.)

plaintiff and to exact retribution." (Dkt. No. 1, ¶ 79.) And although, taking Plaintiff's allegations as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff's restaurant closed and he lost income as a result of Defendants' actions, (*id.* ¶¶ 56–57, 74–75), Plaintiff offers no evidence from which a reasonable juror could conclude that any Defendant acted with the collateral purpose of causing Plaintiff harm, economic or otherwise. Plaintiff refers to Defendant Western previously having stolen $8,075 from Plaintiff, (Dkt. No. 54, ¶ 11; Dkt. No. 1, ¶ 25), and to "an earlier criminal complaint" Plaintiff filed, (Dkt. No. 1, ¶ 78), that allegedly gave rise to Defendants' retribution. But Plaintiff adduces no evidence whatsoever about the "earlier criminal complaint" or as to any specific improper purpose separate from a malicious motive, *see Savino*, 331 F.3d at 77, on the part of any Defendant apart from these conclusory allegations. *See Grytsyk v. Morales*, No. 19-cv-3470, 2023 WL 6122693, at *10, 2023 U.S. Dist. LEXIS 166555, at *27–28 (S.D.N.Y. Sept. 19, 2023) (granting summary judgment on an abuse of process claim where the plaintiff did not adduce any evidence to support his conclusory claim that the "ulterior and improper purpose" was "to drive him out of business" (citation omitted)); *Dash v. Montas*, 612 F. Supp. 3d 138, 154 (E.D.N.Y. 2020) ("Without evidence that Defendant [] harbored any personal animus toward Plaintiff or acted with some other collateral objective—i.e., one not related to law enforcement—in arresting Plaintiff, Plaintiff's claim for malicious abuse of process cannot succeed.").[8]

Accordingly, Defendants' motion for summary judgment is granted with respect to Plaintiff's abuse of process claim.

---

[8] Plaintiff has not alleged Defendant Tyler's involvement in the initiation or continuation of process at all.

### E. Conspiracy and Racial Discrimination

Defendants argue that, "having conducted no discovery whatsoever, Plaintiff is unable to come forward with any admissible evidence that his arrest pursuant to a warrant was anything other than privileged, supported by probable cause as a matter of law, and not the result of any purported conspiracy or because of any discriminatory purpose" and that "[t]here exists no evidence that the defendant officers entered into an agreement with others to deprive Plaintiff of his constitutional rights or that they arrested Plaintiff out of racial animus." (Dkt. No. 47-7, at 13.) Plaintiff does not provide a counterargument. (Dkt. No. 54, at 7.)

Plaintiff has not demonstrated the violation of any of his constitutional rights or any other right or privilege of a citizen of the United States by any Defendant that could provide the basis for a § 1983 or § 1985 conspiracy claim. Nor has Plaintiff adduced any factual support for his conclusory allegations that Defendants "engaged in a scheme and conspiracy designed and intended to deny and deprive him of rights guaranteed to the plaintiff under the Constitution and laws of the United States," (Dkt. No. 1, ¶ 71), or that "the acts against him[] and the continuation of criminal charges against him [were] done discrim[in]atorily because of [Plaintiff's] [H]ispanic race," (*id.* ¶ 39). These conclusory allegations, without factual development, are insufficient to establish either claim. *See Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002); *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983); *Webb v. Goord*, 340 F.3d 105, 110–11 (2d Cir. 2003); *see also Guillen v. City of New York*, 625 F. Supp. 3d 139, 161 (S.D.N.Y. 2022) (collecting cases).[9] Accordingly, Defendant's motion for summary judgment is granted with respect to Plaintiff's claims for conspiracy and racial discrimination.

---

[9] Because Defendants do not raise the intracorporate conspiracy doctrine, the Court does not address its applicability here. *See Guillen*, 625 F. Supp. 3d at 159–61.

16

**F.     Municipal Liability**

Defendants argue that Plaintiff cannot establish a claim against Defendant City of Amsterdam because there are no facts demonstrating that Plaintiff's constitutional rights were violated pursuant to an official policy, practice, or custom of Defendant City of Amsterdam. (Dkt. No. 47-7, at 13–14.) Plaintiff's argument in opposition is limited to recitation of the standard to state a *Monell* claim and the statement that "this case involves the arrest of an Hispanic male from his hominin [sic] which he had not committed any crimes or violations of the law." (Dkt. No. 54, at 7–8.)

"To establish liability under *Monell*, a plaintiff must show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom." *Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir. 2019) (citation omitted); *see also Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978). Here, having granted Defendants' motion for summary judgment with respect to all of Plaintiff's other § 1983 claims, Plaintiff has not established the violation of any of his constitutional rights by any Defendant that could provide the basis for a municipal liability claim against Defendant City of Amsterdam under *Monell*. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Nor has Plaintiff adduced any fact to support such a claim. Accordingly, Defendants' motion for summary judgment is granted with respect to Plaintiff's *Monell* claim for municipal liability.

**G.     State-Law Claims**

Having dismissed all of Plaintiff's federal claims, the Court declines, in its discretion, to retain supplemental jurisdiction over Plaintiff' state-law claims. *See* 28 U.S.C. § 1367(c)(3). When deciding whether to exercise supplemental jurisdiction, courts consider "the values of judicial economy, convenience, fairness, and comity." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117–18 (2d Cir. 2013) (citation omitted). "[I]n the usual case in which

all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Courts "commonly decline to exercise supplemental jurisdiction after awarding defendants summary judgment on plaintiffs' federal claims." *Martin v. Sprint United Mgmt. Co.*, No. 15-cv-5237, 2017 WL 5028621, at *3, 2017 U.S. Dist. LEXIS 180395, at *10 (S.D.N.Y. Oct. 31, 2017) (collecting cases); *see also Sotak v. Bertoni*, 501 F. Supp. 3d 59, 86 (N.D.N.Y. 2020) ("Because summary judgment will be granted as to the [federal] claims, the continued exercise of supplemental jurisdiction over [the plaintiff's] state law claims will be declined."). Because this is a "usual case in which all federal-law claims are eliminated before trial" that presents no exceptional circumstances, *see Cohill*, 484 U.S. at 350 n.7, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims and dismisses those claims without prejudice.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion for summary judgment, (Dkt. No. 47), is **GRANTED in part**; and it is further

**ORDERED** that Plaintiff's federal claims under 42 U.S.C. § 1983 and § 1985 for false arrest; malicious prosecution; unlawful search; abuse of process; conspiracy; racial discrimination; and municipal liability are **DISMISSED**; and it is further

**ORDERED** that the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims, and those claims are **DISMISSED without prejudice** to refiling in state court; and it is further

**ORDERED** that the Clerk of the Court close this case.

**IT IS SO ORDERED.**

Dated: August 14, 2024
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge